UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**Justin Purdy,**

*Plaintiff,*

Case No.: 8:21-cv-1759

v.

**Southwest Credit Systems, LP,**

JURY TRIAL DEMANDED

*Defendant.*

_____/

**COMPLAINT AND JURY TRIAL DEMAND**

COMES NOW the Plaintiff, **Justin Purdy**, ("**Mr. Purdy**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Southwest Credit Systems, LP** ("**Southwest**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Mr. Purdy against Southwest, for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**").

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction for Plaintiff's federal claims exists pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3. Southwest is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

4. Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Mr. Purdy

5. **Mr. Purdy** is a natural person residing in the city of Lakeland, Polk County, Florida.

6. Mr. Purdy is a *Consumer* as defined by 15 U.S.C. § 1681a(c), 15 U.S.C. § 1692a(3).

### Southwest

7. Southwest is a Texas foreign limited partnership with a primary business address of **4120 International Parkway, Suite 1100, Carrollton, Texas 75007**.

8. Southwest is registered to conduct business in the state of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.**

9. Southwest is licensed as a Consumer Collection Agency ("**CCA**") by the Florida Office of Financial Regulation.

10. As licensed a CCA, Southwest knows, or should know, the requirements of the FDCPA.

11. Southwest is a "*debt collector*" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses an instrumentality of commerce, including postal mail and the internet, interstate and within the state of Florida, for their businesses, the principal purposes of which are the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

### Waypoint Reports Charter Communications Debt

12. In or around January 2018, Mr. Purdy allegedly incurred a debt (the "**Debt**") to Charter Communications, formerly known as Bright House Networks ("**Charter**") for cable, internet, and telephone services.

13. The alleged Debt arose from personal services, *specifically* for cable, internet, and telephone services, and therefore meets the definitions of *debt* under the FDCPA, 15 U.S.C. §1692a(5).

14. Around January 2018, Charter assigned, or otherwise transferred the Debt to Waypoint Resource Group ("**Waypoint**"), a Texas-based debt collector.

15. In March 2018, Waypoint began reporting the Debt, monthly, to the major *Credit Reporting Agencies* ("**CRAs**"), including, Experian. **SEE PLAINTIFF'S EXHIBIT A.**

## Mr. Purdy's Dispute of the Debt

16. On or around October 2, 2018, Mr. Purdy requested and obtained a copy of his consumer credit disclosure from Experian.

17. Mr. Purdy saw the Waypoint tradeline reporting to his credit and on that day, disputed Waypoint's reporting of the account.

18. Experian, upon receipt of Mr. Purdy's dispute, sent Waypoint an Automated Consumer Dispute Verification ("**ACDV**") form through an online platform known as e-OSCAR and asked Waypoint to make a reasonable investigation into the dispute pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681, *et. seq.*

19. Waypoint thus knew that Mr. Purdy disputed the Debt, at least as early as October 2018.

20. Waypoint, in response to Mr. Purdy's dispute, responded to the ACDV that the accuracy of the reported information *could not be* verified and thus requested that Experian delete its tradeline. **SEE PLAINTIFF'S EXHIBIT B.**

21. A debt collector who becomes aware a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

## Disputed, Deleted Debt Re-Reported by Southwest

22. On information and belief, Waypoint thereafter returned the Debt to Charter, noting that Mr. Purdy disputed the account.

23. In May 2021, Charter re-assigned the Debt to Southwest

24. On information and belief, Charter informed Southwest of Mr. Purdy's existing dispute.

25. In the alternate, Southwest employed no reasonable procedures designed to flag previously-disputed debts.

26. In June 2021, Southwest reported the Debt to Experian as a purported "new" collection.

27. Southwest also reported the account to Trans Union and Equifax, two other large, nationwide CRAs.

28. Southwest falsely reported the account was "opened" in May 2021, had been "reported since" June 2021, and had a "date of status" of May 2021. *Id.*

29. Southwest reported the same balance, account status, date of first delinquency, and ECOA code as Waypoint had in 2018. *Id.*

30. Southwest reported "TIME WARNER CABLE" as the original creditor.

31. Time Warner Cable was acquired by Charter in May 2016. Time Warner Cable was not the original creditor of Mr. Purdy's debt; rather, it was

Bright House Networks, LLC ("BrightHouse"), which was also acquired by Charter in 2016.

32. Southwest failed to indicate the Debt was disputed in its report to Experian. *Id.*

33. The tradeline thus appeared on Mr. Purdy's credit report as an "non-disputed" debt.

34. Southwest is a large debt collector and receives a considerable number of disputes concerning internet, cable, and telephone debts it reports to CRAs. Southwest knew, when it received a portfolio of charged-off debts for collection from Charter in May 2021, which included Mr. Purdy's purported Debt, it was not the first collection agency to be assigned the account.

35. Southwest thus knew—or reasonably should have known – a considerable number of the accounts had been previously disputed and had to be reported as such.

36. On information and belief, Southwest has no policies in place to ask creditors, like Charter, who place debts for collection with it, whether the creditor was aware of any prior disputes by the relevant consumers.

37. Assuming, *arguendo*, that Charter failed to disclose to Southwest the Debt was disputed, reliance on an original creditor's erroneous records is not a defense to an FDCPA action. *See Foster v. Franklin Collection Service,* Civil Action

Number 5:17-cv-00008-TES M.D. GA 9-13-2018 (holding that *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) is binding in the 11th Circuit, which "subjects debt collectors to liability even when violations are not knowing or intentional").

38. Southwest's failure to disclose that the Debt was disputed materially damaged Mr. Purdy's credit scores.

39. The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Mr. Purdy suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

40. Further, Southwest's reporting of the Debt with a different original creditor's name, different "date opened" and different "date of status" was engaged in with the intention of circumventing automated systems employed by CRAs like Experian designed to prevent the re-reporting of previously-deleted information, as required by 15 U.S.C. § 1681i(a)(5)(B).

41. Had Southwest's reporting been substantially similar to Waypoint's, Experian's automated systems would have prevented the Southwest tradeline from appearing on Mr. Purdy's report.

42. As a result of Southwest's re-reporting of previously-deleted information as a purported "new" collection, Mr. Purdy's credit scores dropped

significantly. His FICO® 8 score as calculated by Trans Union dropped 54 points, from a 710 (considered "good") to a 656 (considered "fair"), and his Equifax FICO® 8 score dropped from a 696 to a 665.

43. Had Southwest reported the account with a Metro 2 Compliance Condition Code of "XB" ("consumer disputes this information"), Mr. Purdy's scores would have remained unchanged.

### Southwest Reports False 'Date of Status'

44. The "date of status" of a collection account indicates the date an account was first designated to be "in collection." *Cf. Baker v. Capital One Bank*, No. CV 04–1192 PHX–NVW, 2006 WL 2523440, at *4–*5 (D.Ariz. Aug. 29, 2006).

45. Southwest's report indicating a "date of status" of May 2021 falsely implies that the account was first referred for collection in May 2021, even though it had been placed for collection in March 2018, or earlier.

46. The "date of status" is a key point of data evaluated by many versions of FICO® credit scores, including FICO Model 2, used by Experian for mortgage evaluations. The more recent the "date of status," the more adverse the information is factored against the consumer. *See Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707 (S.D. Tex. 2013).

47. Further, "(a)reasonable jury could find that the 'Date of status' entry was "misleading in such a way and to such an extent that it can be expected to

adversely affect credit decisions." *Id*. (quoting *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890 (5th Cir. 1998)).

### Southwest Reports False 'Date Opened"

48.Southwest reported to Experian that the Charter account had a "Date Opened" of May 2021. ***Id.***

49.Again, Southwest's reported information is demonstrably false. Time Warner Cable ceased to exist in 2016, when it was acquired by Charter. As such, no account with "Time Warner Cable" could possibly have been "opened" in May 2021. Additionally, Mr. Purdy opened the account with Bright House Networks in 2014.

50.A reasonable and prudent reader of Mr. Purdy's credit report would infer that an account indicating a balance owed to "Time Warner Cable" reflecting a "Date Opened" of May 2021 means – as the plain language implies – the account was opened with Charter in May 2021. *Toliver,* 973 F. Supp. 2d 707, 721 ("Here, there is no language to indicate that 'Date opened' means anything other than the date that the consumer opened the account, as it does for the majority of accounts on (Plaintiff's) credit report…. (A) reasonable jury could find that the "Date opened" entry was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (Internal quotations omitted).

51. Likewise, a reasonable and prudent reader of Mr. Purdy's credit report would infer that an account indicating a balance owed to "Time Warner Cable" reflecting a "Date Opened" of May 2021 means – as the plain language implies – the account was opened with "Time Warner Cable" in May 2021, and was therefore far more recent than was actually the case.

52. To the extent that Southwest may have been relying upon Metro 2 guidelines promulgated by the Consumer Data Industry Association when determining how to report the "Date opened," "Date of status" and date "First reported," the failure to adhere to Metro 2 guidelines does not give rise to a violation of the FDCPA. *See Dash v. Midland Funding LLC*, Case No: 8:16-cv-2128-T-36AAS (M.D. Fla. Mar. 3, 2017) quoting *Mestayer v. Experian Info. Sols., Inc*, 15-CV-03645-EMC, 2016 WL 631980, at *4 (N.D. Cal. Feb. 17, 2016) ("[Plaintiff] has failed to point to any authority indicating that a failure to comply with an industry standard is a failure to comply with the law.")

53. Experian and other CRAs included Southwest's errant credit information in reports it sold to creditors, or potential creditors, of Mr. Purdy.

54. As a result, Mr. Purdy has suffered damages including loss of credit and damage to his reputation.

55. Mr. Purdy has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees and / or has assigned his right to attorney fees and costs to the law firm.

## COUNT I
## SOUTHWEST'S VIOLATIONS OF THE FDCPA

56. Mr. Purdy adopts and incorporates paragraphs 1 – 55 as if fully stated herein.

57. Southwest violated **15 U.S.C. § 1692e and 1692e(10)** when Southwest made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, claiming the "status date" (e.g., the date which the account became a collection) was May 2021, when it was March 2018 or earlier, that the account had been "first reported" as of June 2021, when it had been reported since March 2018 or earlier, and that the Debt was not disputed, when it was disputed, and that the original creditor was Time Warner Cable, when it was not, and was Bright House Networks.

58. Southwest violated **15 U.S.C. § 1692e(8)** when Southwest communicated credit information known to be false, specifically, the "status date" of the Debt (e.g., the date which the account became a collection) was February 2021, when it was March 2018 or earlier, that the account had been "first reported" as of June 2021, when it had been reported since March 2018 or earlier, and that

the Debt was not disputed, when it was disputed, original creditor was Time Warner Cable, when it was not, and was Bright House Networks.

59. Southwest violated **15 U.S.C. § 1692e(8)** when Southwest communicated credit information which was known to be disputed, or which should have been known to be disputed, without disclosure of dispute, in its reports to Experian, Trans Union and Equifax in June 2021.

60. Southwest violated **15 U.S.C. § 1692e(2)(a)** when Southwest made false and misleading representations about the character, amount and legal status of the Debt when it falsely claimed the "status date" of the Debt (e.g., the date which the account became a collection) was May 2021, when it was March 2018 or earlier, that the account had been "first reported" as of June 2021, when it had been reported since March 2018 or earlier, and that the Debt was not disputed, when it was disputed.

61. Southwest's actions render it liable for the above-stated violations of the FDCPA, and Mr. Purdy is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

62. Southwest's actions caused Mr. Purdy to suffer damages to his credit report and scores, as well as emotional distress in having to deal with an account which he thought had been deleted as a result of his dispute.

**WHEREFORE,** Mr. Purdy respectfully requests this Honorable Court enter judgment against Southwest and for him as follows:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on July 20, 2021, by:

**SERAPH LEGAL, P. A.**

/s/ Thomas M. Bonan
Thomas M. Bonan Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com
1614 N 19th Street
Tampa, Florida 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorney for Plaintiff*

**EXHIBIT LIST**

A      Plaintiff's Experian Consumer Disclosure, October, 2, 2018, Waypoint Tradeline - Excerpt
B      Plaintiff's Experian Consumer Disclosure, June 18, 2021, Southwest Tradeline - Excerpt